**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

SAMANTHA RUBIN,                                    Case No.

                           Plaintiff,                    **COMPLAINT**

       -against-

                                 **Jury Trial Demanded**

FAMILY CHATEAU, INC. d/b/a
The Chateau Coffee Shop and
DARIO FUENTES,

                         Defendants.
-------------------------------------------------------------X

Plaintiff Samantha Rubin ("Rubin" or "Plaintiff") alleges against Defendants Family Chateau, Inc. d/b/a The Chateau Coffee Shop ("The Coffee Shop") and Dario Fuentes ("Fuentes") (collectively, "Defendants"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Rubin, a former employee at The Coffee Shop, was sexually harassed, discriminated against, assaulted and battered, forced to endure a hostile work environment, and retaliated against. To make matters worse, Rubin was paid less than minimum wage, solely in cash.

2. Thankfully, the Federal and New York State anti-discrimination and anti-retaliation laws are intended to afford the same rights to all employees, no matter their gender, and provide them with the dignity and respect they deserve in the workplace.

3. As such, this is an action for declaratory, injunctive and monetary relief to redress Defendants' unlawful employment practices, including unlawful discrimination, a hostile work environment and retaliation committed against the Plaintiff, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").

4. In addition, Plaintiff asserts a claim for unpaid minimum wage pursuant to the New York Labor Law ("NYLL"), in addition to statutory violations for the failure to provide a wage notice and wage statements / paystubs with each payment made.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States. This Court has supplemental subject matter jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

7. On January 15, 2024, Plaintiff duly filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") – EEOC Charge No. 520-2024-02327.

8. The EEOC sent a Notice of Right to Sue to Plaintiff dated April 10, 2024.  See Exhibit A.

9. Any and all other prerequisites to the filing of this suit have been meet.

## PARTIES

10. Plaintiff Samantha Rubin ("Rubin" or "Plaintiff") was and is a resident of Nassau County in the State of New York.

11. Rubin was and is a female.

12. Defendant Family Chateau, Inc. d/b/a The Chateau Coffee Shop ("The Coffee Shop") was and is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

2

13. The Coffee Shop was and is authorized to conduct business in the State of New York.

14. The Coffee Shop was and is located at 1 Station Plaza, Woodmere NY 11598.

15. The Coffee Shop was and is a restaurant that serves food and drinks to customers.

16. At all times relevant to this action, The Coffee Shop has been a business or enterprise engaged in interstate commerce employing more than two employees with gross annual sales over $500,000.00.

17. At the all times relevant to this action, The Coffee Shop had employees, including Plaintiff, directly and regularly engaged in interstate commerce.  Food and drinks provided to customers at The Coffee Shop came, in part, from out of state.

18. Defendant Dario Fuentes ("Fuentes"), upon information and belief, was and is a resident of the State of New York.

19. Fuentes was and is employed by The Coffee Shop.

20. Fuentes was and is employed by The Coffee Shop as Head Chef.

21. Fuentes worked for The Coffee Shop at 1 Station Plaza, Woodmere NY 11598.

22. In that role, Fuentes was Rubin's immediate supervisor.

23. At all times relevant to this action, Fuentes possessed and exercised the power and authority to hire and fire Plaintiff, determine work schedules, and otherwise, establish, control and modify the terms and conditions of Plaintiff's employment.

24. At all times relevant to this action, Plaintiff could complain to Fuentes directly regarding any of the terms of her employment, and Fuentes would have the authority to effect any changes to the quality, terms and conditions of her employment.

## FACTUAL ALLEGATIONS

25. On or about June 22, 2020, Rubin commenced employment with The Coffee Shop.

26. Rubin was initially hired as a Waitress.

27. In May 2021, Rubin added the title of "manager' where she had a role (though not ultimate authority) for scheduling, interviewing, hiring and firing.

28. Rubin worked for The Coffee Shop at 1 Station Plaza, Woodmere NY 11598.

29. The Coffee Shop's hours are 8:00 a.m. to 3:00 p.m. Monday, Friday and Saturday, and 8:00 a.m. to 7:30 p.m. on Tuesday, Wednesday and Thursday, and closed on Sunday.

NYLL Wage Violations

30. Rubin was paid $8.00 per hour plus an additional $25.00 per day once she became a "manager" in May 2021.

31. The Coffee Shop paid Rubin solely in cash throughout her employment.

32. Rubin was paid at the end of each day, typically by Fuentes.

33. Rubin was not provided with a wage notice upon her hire or annually.

34. Additionally, Rubin did not receive any pay stubs / wage statements with each payment she received.

35. On average, Rubin worked 30 hours per week.

36. Rubin was paid less than the required New York State minimum wage.

37. Defendants knowingly and intentionally paid Rubin less than the required minimum wage.

Title VII & NYSHRL Sexual Harassment, Discrimination, Hostile Work Environment, Assault and Battery & Retaliation

38. In addition to being improperly paid, Rubin was sexually harassed, forced to endure a hostile work environment, assaulted and battered and retaliated against.

39. On an ongoing and pervasive basis, Fuentes sexually harassed Rubin.

40. By way of example, Fuentes would tell Rubin how big her ass was.

41. Fuentes would also say to Rubin that her boobs have gotten bigger.

42. When Fuentes overheard that Rubin was visiting her boyfriend in Suffolk County, Fuentes would say, O you go out to the woods, Did you have sex in the woods?

43. Further, Fuentes asked Rubin what kind of porn she watched.

44. When bagging food (like a sandwich), Fuentes would say to Rubin, Can I put it in? (in a sexual manner).

45. On multiple occasions, Fuentes called Rubin after hours and asked what she was wearing.

46. Fuentes also told Rubin, You must have got some (sex) last night.

47. Fuentes asked Rubin, When can I taste it? and Are you going home to play with your pussy?

48. Fuentes would also "accidentally" bump into Rubin, graze Rubin's butt and blow into her ear.

49. Rubin would wear leggings to work with pockets.  Fuentes made a habit of putting his hands into Rubin's pockets, without her consent.

50. Fuentes not only did this to Rubin, but also to other female employees of The Coffee Shop, including Kristen.

51. On or about November 2021, Rubin complained to Sandy Lachman ("Sandy") – The Coffee Shop Owner about the sexual harassment by Fuentes.

52. No remedial action was taken by Sandy in response to Rubin's complaint.

53. On November 10, 2021, Sandy and Rubin exchanged text messages as follows:

-Sandy: How has everything been at work?
-Rubin: Perfect. Dario (Fuentes) isn't talking to me so it's going great.
-Sandy: Ugh.
-Rubin It's better like this tho.  No sexual innuendos or harassment.
-Sandy: Ok but everyone else is good?  No issues with any customers?

54. On or about, Wednesday, December 13, 2023 at approximately 5:30 p.m., Fuentes was working as a delivery driver.

55. Occasionally, Fuentes would request that Rubin go with him to deliver food, as he did on this day.

56. After dropping off the food, Rubin returned to sit in the passenger seat of Fuentes' Silva Honda Civic.  Fuentes was in the driver's seat.  Fuentes started driving, turning around the corner very slowly.  **Then Fuentes pulled Rubin's head into his, attempting to kiss her. Rubin ducked out of it.  Fuentes then pulled over and put his arm violently around Rubin's neck.  Rubin said, What are you doing?  Fuentes replied, O come on, You know you want to.  Rubin replied, No.  Fuentes persisted by saying, I can make car payments.  I know you want a new car.  I know you want a place to live.  I can help you with that too.**  Rubin continued to resist, saying No, You're fucking nuts.

57. **Fuentes then physically grabbed Rubin around the neck a third time to try to kiss her. After Rubin resisted again, Fuentes said, What do you want me to do?  Rubin said, Just go back to the store.  Please go back.  Fuentes, displeased, said, A lot of people have been telling me to fire you.  I like you.  I really like you.  I'm not going to ask you again but this door is always open.  Don't tell anyone this ever happened especially Jimmy (a co-worker who works night shift).  Fuentes drove Rubin back and dropped her off at The Coffee Shop.**

58. **Francis "Papi (a co-worker) saw Rubin as she walked into The Coffee Shop with red marks on neck.**

59. Fuentes assaulted and battered Rubin.

60. On or about Friday, December 15, 2023, Fuentes retaliated against Rubin by sending her home from work an hour early.

61. Rubin called Sandy and described the December 13, 2023 sexual assault to her.  Specifically, Rubin explained that she no longer felt safe working at The Coffee Shop.

62. Sandy did not seem sympathetic in response.  Sandy said she would speak with Larry (Lawrence Lachman – Owner) and get back to her.  Sandy never did.

63. **Later that same day – Friday, December 15, 2023, Rubin went to the Police (4th Precinct – 1699 Broadway, Hewlett NY 11557) and spoke with Detective Brandon Rodriguez. Rubin filled out an incident report and showed the Detective pictures of the red marks from the assault.**

64. **On the next day, Saturday, December 16, 2023, Rubin arrived for her scheduled shift at the Coffee Shop.  Once Kristen (a co-worker) came in, Fuentes took Rubin outside and had a conversation with her (which was recorded).  Among the things said by Fuentes on the recording are:**

- **Why are you make such a big deal of this**

- **Yes, I put my hands on you that's true**

- **I want you (Rubin) to apologize to Sandy**

- **What you're doing is wrong**

- **I've told people to fire you**

- **You are selfish**

- **It's in your head and I can sue you.**

65. Rubin, highly distraught from the conversation with Fuentes, went back inside The Coffee Shop and put her apron on. **Fuentes followed Rubin inside and told Rubin to leave, terminating her employment.**

66. On Sunday, December 17, 2023, Sandy called Rubin and told her she could return to work on Wednesday, December 20, 2023, but only if she would first talk to Fuentes in-person on Monday morning. Additionally, Rubin could only return to work as a waitress (not as a manager) and would not receive the additional $25.00 per day. Sandy specifically asked Rubin, Whoever told you that you were a manager?

67. **The Coffee Shop blatantly retaliated against Rubin by taking no remedial action after she complained of sexual harassment, terminating her employment after she refused to drop the allegations, and then only willing to rehire Rubin if she agreed to first speak with Fuentes (the sexual harasser) and for reduced pay with a lesser job title.**

68. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

69. As a result of the Defendants actions, Plaintiff suffered and continues to suffer from severe emotional distress.

70. As a result of the Defendants actions, Plaintiff sustained lost wages.

71. As Defendants conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.

## FIRST CAUSE OF ACTION
### (Gender / Sex Discrimination in Violation of Title VII)
#### *Against Defendant The Coffee Shop*

72. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

73. By the actions described above, among others, Defendants have discriminated against Plaintiff because of her gender / sex in violation of Title VII.

74. As a direct and proximate result of Defendants unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**SECOND CAUSE OF ACTION**
**(Hostile Work Environment in Violation of Title VII)**
*Against Defendant The Coffee Shop*

75. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

76. By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her gender / sex, in violation of Title VII.

77. As a direct and proximate result of Defendants unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**THIRD CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**
*Against Defendant The Coffee Shop*

78. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

79. By the actions described above, among others, Defendants retaliated against Plaintiff in violation of Title VII for engaging in protected activity.

80. As a direct and proximate result of Defendants unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION
### (Gender / Sex Discrimination in Violation of NYSHRL)
### *Against All Defendants*

81. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

82. By the actions described above, among others, Defendants have discriminated against Plaintiff because of her gender / sex in violation of the NYSHRL.

83. As a direct and proximate result of Defendants unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of NYSHRL)
### *Against All Defendants*

84. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

85. Pursuant to the NYSHRL, a Plaintiff can establish a hostile work environment claim if she can show that she was treated less well than other employees because of her protected class.

86. Plaintiff was treated less well by the Defendants because of her gender/sex.

87. As a direct and proximate result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)
*Against All Defendants*

88. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

89. By the actions described above, among others, Defendants have retaliated against Plaintiff in violation of the NYSHRL for engaging in protected activity.

90. As a direct and proximate result of Defendants unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SEVENTH CAUSE OF ACTION
### (Assault and Battery)
*Against Defendant Fuentes*

91. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

92. By the actions described above, among others, Fuentes committed an Assault and Battery against the Plaintiff by: (a) intending to cause a harmful or offensive contact with the person of the plaintiff, or an imminent apprehension of such a contact, (b) the plaintiff is thereby put in such imminent apprehension, and (c) causing a harmful or offensive contact with the Plaintiff.

93. As a direct and proximate result of Fuentes's unlawful assault and battery, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## EIGHTH CAUSE OF ACTION
### (NYLL – Unpaid Minimum Wage)
*Against All Defendants*

94. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

95. Defendants failed to pay Plaintiff the minimum wages to which she was entitled under the NYLL.

96. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff minimum hourly wages for all hours worked.

97. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq.*

## NINTH CAUSE OF ACTION
### (NYLL – Failure to Provide Wage Notice)
*Against All Defendants*

98. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

99. Defendants have willfully failed to supply the Plaintiff with a wage notice as required by NYLL, Article 6, § 195(1), at the time of hire or annually, containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission other; the regular pay day designated by the employer; the name of the employer; the physical address of the employer and the telephone number of the employer.

100.    Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from

Defendants fifty dollars for each workday that the violations occurred or continue to occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### TENTH CAUSE OF ACTION
### (NYLL – Failure to Provide Wage Statements)
*Against All Defendants*

101.    Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

102.    Defendants have willfully failed to provide the Plaintiff with proper wage statements as required by NYLL Article 6 § 195 (3) with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employer; address and phone number of employer' rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary or other; gross wages; deductions; and net wages.

103.    Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants two hundred fifty dollars for each workday that the violations occurred or continue to occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

B. An injunction and order permanently removing and clearing information to the contrary contained in Plaintiff's employee file and restraining Defendants from engaging in such unlawful conduct;

C. An award of compensatory damages as of result of Defendants' violation of Title VII, the NYSHRL, and for the assault and battery;

D. An award of lost wages to Plaintiff, retroactive to the date of her termination;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional and psychological pain and suffering, and emotional and psychological distress caused;

F. An award of damages in an amount to be determined at trial for the physical pain and suffering due to the assault and battery committed;

G. An award of punitive damages;

H. An award of compensatory damages as a result of Defendants' failure to pay minimum wage pursuant to the NYLL and supporting regulations;

I. An award of liquidated damages as a result of Defendants' willful failure to pay minimum wage compensation pursuant to the NYLL;

J. An award of $5,000.00 for the failure to provide a proper wage notice upon hire or annually;

K. An award of $5,000.00 for the failure to provide proper wage statements pursuant to

the NYLL;

L.  An award of prejudgment and post-judgment interest;

M.  An award of costs and attorneys' fees pursuant to applicable law; and

N.  An award of such other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: April 17, 2024
New York, New York

Respectfully submitted,

**Akin & Salaman PLLC**

*/s/ Robert D. Salaman*

_____
Robert D. Salaman
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
rob@akinlaws.com

*Counsel for Plaintiff*

15